

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-30-2005

# Tedesco Mfg Co Inc v. Honeywell Intl

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1040

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Tedesco Mfg Co Inc v. Honeywell Intl" (2005). *2005 Decisions.* Paper 1414.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1414

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-1040

TEDESCO MANUFACTURING COMPANY, INC.

v.

HONEYWELL INTERNATIONAL, INC.,
Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania
D.C. Civil Action No. 03-cv-00699
(Honorable David S. Cercone)

Argued January 13, 2005

Before: SCIRICA, *Chief Judge*, ROTH, *Circuit Judge*, and IRENAS, *District Judge**

(Filed: March 30, 2005)

ANDREW J. McGUINNESS, ESQUIRE (ARGUED)
THOMAS M. HANSON, ESQUIRE
Dykema Gossett
2723 South State Street, Suite 400
Ann Arbor, Michigan 48104

*The Honorable Joseph E. Irenas, United States District Judge for the District of New Jersey, sitting by designation.

JOHN C. HANSBERRY, ESQUIRE
Pepper Hamilton
5000 One Mellon Bank Center
500 Grant Street
Pittsburgh, Pennsylvania 15219

      Attorneys for Appellant


CHAD I. MICHAELSON, ESQUIRE (ARGUED)
RUSSELL J. OBER, JR., ESQUIRE
DOUGLAS M. HOTTLE, ESQUIRE
Meyer, Unkovic & Scott
1300 Oliver Building
535 Smithfield Street
Pittsburgh, Pennsylvania 15222

      Attorneys for Appellee

---

OPINION OF THE COURT

---

SCIRICA, *Chief Judge*.

Honeywell International appeals from a judgment of the District Court granting Tedesco Manufacturing Company's motion to enforce a settlement agreement reached by the two parties. In granting Tedesco's motion, the District Court ordered Honeywell to pay Tedesco a sum of $700,000 without offset. On appeal, Honeywell challenges the District Court's interpretation of the agreement, arguing that it created a broad right of offset, and that Honeywell had the right to offset certain payments Tedesco was obligated to make against the $700,000. Because we find that the settlement agreement

2

unambiguously created a broad offset right, we conclude that it was error to order Honeywell to pay the $700,000 without offset. Therefore we will reverse the judgment of the District Court.

## I.

Honeywell and Tedesco are both involved in the manufacture of Bendix brake systems. Honeywell, which owns the Bendix trademark, produces parts that are assembled into complete braking systems by independent companies such as Tedesco. The relationship between Honeywell and Tedesco is governed by a Regional Manufacturing and Distribution Agreement (RMDA) under which Tedesco has the exclusive right to manufacture Bendix brakes in certain states. The agreement was signed by Tedesco and Allied Signal Corporation, Honeywell's predecessor, in 1992. Under the terms of the agreement, Honeywell can dictate the materials used by Tedesco as well as the price Tedesco receives for each completed unit.

Because certain parts in a brake shoe system are recycled, the purchase price paid by a customer included a "core deposit" which Honeywell transferred as a "core credit" to Tedesco. When it received a return of a used pair of brake shoes, Tedesco notified Honeywell which effectively triggered a credit to Honeywell from Tedesco for an amount equivalent to the core deposit. Honeywell in turn credited this amount to the customer who returned the used brake shoes. Thus, accounting for the core deposits and core

credits was revenue neutral to Honeywell but profitable to Tedesco to the extent that customers failed to return old brake shoes.

Following the Honeywell-Allied merger, the relationship between the parties began to sour. Tedesco claims that Honeywell sought to eliminate the system of independent manufacturers and pressured it and other manufacturers to accept lower prices for complete brake systems. In addition, Tedesco asserts that Honeywell began to withhold money it owed for core credits and began directing certain customers in Tedesco's territory to other manufacturers. Honeywell does not deny withholding money it owed Tedesco but asserts it did so because Tedesco failed to process returned brake shoes quickly enough so that Honeywell could credit its customers with refunds of their core deposits.

In May of 2003, Tedesco filed suit against Honeywell, alleging breach of contract and misrepresentation. On August 27, 2003, the parties met for a scheduled deposition and agreed to settle the case. The general terms of the settlement were memorialized in an agreement in principle (AIP), which was dictated to a court reporter present for the deposition. Under the terms of the AIP, Honeywell agreed to buy out Tedesco's right to manufacture Bendix brakes for $450,000 and further agreed to purchase Tedesco's usable inventory. The agreement also required the parties to make a variety of other payments to each other in order to settle the various claims which spurred the lawsuit. In addition, the

4

AIP obligated the parties to negotiate in good faith to reach a final settlement of the case.

Finally, and most relevant to the issue on appeal, paragraph thirteen of the AIP stated:

> Honeywell shall have the right to offset from all payments due under this agreement any amounts owed by Tedesco to Honeywell under this agreement.

Following approval of the AIP, the parties exchanged several draft proposals in order to reach a final settlement but were unable to do so.[1] Tedesco, claiming that Honeywell sought to add terms to the settlement that were outside the scope of the AIP, filed a motion in the District Court to enforce the settlement. The Court granted the motion, agreeing with Tedesco that Honeywell had attempted to modify the AIP. In addition, the District Court interpreted paragraph thirteen to give Honeywell a limited offset right and requiring Honeywell to pay Tedesco a total of $700,000 without offset: $450,000 to buy Tedesco out of the RMDA under paragraph four of the agreement, $235,000 for core credits under paragraph seven, and $15,000 "for reboxing DAP Product" under paragraph eight. The District Court ordered Honeywell to make this payment within two weeks. In addition, the Court required the parties to execute a final agreement within forty-five days.

On January 7, 2004, Honeywell moved to stay the order pending appeal. The District Court granted the stay and required Honeywell to post a bond in the amount of

---

[1] Both parties agree there is a binding, enforceable contact notwithstanding the failure to reduce the AIP to a final written settlement agreement. Their dispute relates only to the proper interpretation of the contract embodied in the AIP.

$690,000. Tedesco then moved to modify the stay to require Honeywell to pay $450,000 upfront. The District Court denied the motion on May 27, 2004.

## II.

A motion to enforce a settlement agreement is similar in many respects to a motion for summary judgment. *See Tiernan v. Devoe*, 923 F.2d 1024, 1031 (3d Cir. 1991). Where, as here, the District Court grants a party's motion to enforce a settlement agreement without holding an evidentiary hearing and making explicit findings of fact, we review the District Court's order de novo.

A settlement agreement is a contract, and familiar principles of contract law govern this case. We first determine, as a matter of law, whether the relevant provision of the contract is ambiguous. *Sanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc.*, 198 F.3d 415, 421 (3d Cir. 1999). A provision is ambiguous if it is "susceptible to reasonable alternative interpretations." *Id.* If we determine that a provision is ambiguous, then we leave it to the trier of fact to ascertain its meaning.

Paragraph thirteen of the AIP reads:

> Thirteen, Honeywell shall have the right to offset from all payments due under this agreement any amounts owed by Tedesco to Honeywell under this agreement.

The District Court interpreted this paragraph to "allow Honeywell to offset monies owed by Tedesco for raw material [under paragraph ten of the AIP] against the cost of usable inventory [paragraph one] and all the raw materials to be repurchased by Honeywell from

6

Tedesco [paragraph two]." The District Court concluded that the payments Honeywell was obligated to make under paragraphs four, seven, and eight were to be made without offset. On appeal, Honeywell contends that the plain meaning of paragraph thirteen dictates that the offset right apply to all payments under the agreement, not just those recognized by the District Court.

We hold that the language in paragraph thirteen is unambiguous and grants Honeywell a right to offset all of the payments it is owed by Tedesco under the agreement against all the payments it is obligated to make. By its own terms, the offset provision applies to "*all* payments due [from Honeywell to Tedesco] under this agreement" and "*any* amounts owed by Tedesco to Honeywell under this agreement" (emphasis added). Tedesco argues instead that the phrase "all payments due under this agreement" should not be read to include obligations that, though mentioned in the AIP, have their genesis in the RMDA. In particular, Tedesco argues that the balance of its "trade account" with Honeywell should not be considered a payment due under the AIP and therefore should not be subject to offset.

We disagree. While many of the obligations due under the AIP date back to the RMDA, the plain language of paragraph thirteen applies to "all payments due under [the AIP]," regardless of their origins. Nothing in paragraph thirteen suggests the offset provision is meant to exclude obligations that have their origins in the RMDA. Because the AIP purports to "resolve all claims" in the suit, it is no longer accurate to speak of

7

certain obligations as being "due under" the RMDA. Rather, to the extent these obligations are mentioned in the AIP, they are "due under" the latter agreement.

**III.**

In granting Tedesco's motion, the District Court concluded that the absence of the words "credit" or "offset" from paragraphs one, two, four, seven, and eight of the AIP suggested that those payments were to be made without offset. In addition, the Court found that it would be illogical to grant Honeywell a right to offset Tedesco's obligations against money that Honeywell indisputably owed Tedesco, including money for core credits that Honeywell had previously withheld from Tedesco. But the absence of words such as "credit" or "offset" in other sections of the agreement does not necessarily imply that the offset right in paragraph thirteen was intended to be limited. Because paragraph thirteen plainly states that the offset right applies to "all payments," it would have been redundant for the parties to use words such as "credit" in referring to Honeywell's obligations in other parts of the agreement. Similarly, we see nothing illogical in allowing Honeywell to offset Tedesco's obligations against money it had previously withheld from Tedesco. The broad right of offset recited in paragraph thirteen is consistent with the parties' acceptance of the obligations set forth in the AIP.

Finally, the District Court relied on language in draft agreements submitted by Honeywell subsequent to the AIP as evidence that the parties did not intend to create a broad offset right. When the language of a contract is clear, we will ordinarily not look to

8

extrinsic evidence to ascertain the parties' intent. *See Glenn Distribs. Corp. v. Carlisle Plastics, Inc.*, 297 F.3d 294, 300 (3d Cir. 2002). While we see no need to look to the provisions of the draft agreements to ascertain the meaning of the AIP, we do note that both draft agreements relied on by the District Court contain language granting Honeywell a broad offset right consistent with paragraph thirteen of the AIP. Thus, the draft agreements do not support the conclusion that the parties intended the limited offset right found by the District Court.

Regardless, we hold the language of the AIP is clear and grants Honeywell the right to offset Tedesco's obligations under the AIP against the payments it is obligated to make. Therefore we will reverse the judgment of the District Court and remand for proceedings consistent with this opinion.